UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN J. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | 15 C 8482 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| RALPH GERALD PORTER, JR. a/k/a RALPH "BUD" PORTER, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

John Brown brought this suit against Ralph Porter in the Circuit Court of Cook County, Illinois, after he was injured on a boat piloted by Porter. Doc. 1-1. Porter timely removed the suit to this court, citing the admiralty jurisdiction under 28 U.S.C. § 1333. Doc. 1. Brown has moved to remand the suit to state court, arguing that it does not fall within the admiralty jurisdiction and that, even if it did, § 1333's "saving-to-suitors" clause precludes its removal. Doc. 13. The motion is granted and the case is remanded to state court.

**Background**

The complaint's well-pleaded facts are assumed true at this stage of the proceeding. On August 7, 2013, Brown was a passenger on a boat that Porter was piloting on the waters of Lake Michigan between Navy Pier and the 31st Street Harbor. Doc. 1-1 at ¶¶ 1-2. Porter drove unreasonably fast and tried to jump waves, causing the boat to bounce violently. *Id*. at ¶ 4. Because Porter failed to warn Brown to brace himself, Brown was thrown around the boat's cabin and sustained severe injuries. *Id*. at ¶¶ 4-6.

**Discussion**

As noted, Brown offers two grounds for remand. First, he contends that this suit does not fall within the § 1333 admiralty jurisdiction. Doc. 18 at 1-4. Second, he argues that even if it did, § 1333's saving-to-suitors clause precludes its removal. *Id*. at 5-7. Brown is wrong on the first ground but right on the second.

**I.      This Case Falls Within the § 1333 Admiralty Jurisdiction**

The Constitution extends the federal judicial power "to all Cases of admiralty and maritime Jurisdiction." U.S. Const. art. III, § 2, cl. 1. Congress codified that power in § 1333, which confers jurisdiction on the district courts over "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). Until relatively recently (from an admiralty law perspective), tort litigants could invoke the admiralty jurisdiction whenever the incident at issue occurred on navigable waters: "The historic view of [the Supreme] Court ha[d] been that the maritime tort jurisdiction of the federal courts is determined by the locality of the accident and that maritime law governs only those torts occurring on the navigable waters of the United States." *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 205 (1971).

But in *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249 (1972), the Supreme Court jettisoned the locality test for one also requiring the alleged tort to "bear a significant relationship to traditional maritime activity." *Id*. at 268. The Court observed that the significant relationship test was "more sensible and more consonant with the purposes of maritime law than … a purely mechanical application of the locality test," which hypothetically would allow "a swimmer at a public beach [who] is injured by another swimmer" to invoke the admiralty jurisdiction. *Id*. at 255, 261. In *Jerome B. Grubart, Inc. v. Great Lakes Dredge &*

2

*Dock Co.*, 513 U.S. 527 (1995), the Court explained that the significant relationship test has both a location requirement and a connection-to-maritime-activity requirement:

> [A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity. A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce. Second, a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.

*Id*. at 534 (internal citations and quotation marks omitted).

Brown concedes that the locality requirement is satisfied here, as the alleged tort occurred on a boat on Lake Michigan. Doc. 18 at 4. As for the connection requirement, Brown cannot plausibly dispute that Porter's piloting a boat on Lake Michigan had a substantial relationship to traditional maritime activity. But as to the second component of the connection requirement, Brown contends that Porter's alleged negligence "could have no conceivable impact on interstate maritime commerce." *Ibid*.

*Sisson v. Ruby*, 497 U.S. 358 (1990), illustrates how the disruptive-impact component of the connection requirement is applied. A pleasure yacht docked at a marina on Lake Michigan caught fire, damaging several neighboring vessels and the marina. *See id*. at 360. In rejecting the contention that the fire had only a minimal potential effect on maritime commerce, the Court explained:

> We determine the potential impact of a given type of incident by examining its general character. The jurisdictional inquiry *does not turn on the actual effects on maritime commerce of the fire on Sisson's vessel*; nor does it turn on the particular facts of the incident in this case, such as the source of the fire or the specific location of the yacht at the marina, that may have rendered the fire on the *Ultorian* more or less likely to disrupt commercial activity. Rather, a court must assess *the general features of the type of incident involved to determine whether such an incident is likely to disrupt commercial activity*.

*Id*. at 363 (emphases added). Describing the incident as "a fire on a vessel docked at a marina on navigable waters," the court concluded that it had a potentially disruptive impact on maritime commerce because the fire could have "spread to nearby commercial vessels or make the marina inaccessible to such vessels." *Id*. at 362-63.

Another cogent illustration comes from *Jerome B. Grubart*, a case arising from the Great Chicago Flood of 1990, which occurred when the collapse of a freight tunnel's walls allowed water from the Chicago River to flow into the tunnel and surrounding buildings. 513 U.S. at 530. The Court reasoned that the disruptive-impact component of the connection-to-maritime-activity requirement turned "on a description of the incident at an intermediate level of possible generality." *Id*. at 538. Characterizing the flood as "damage by a vessel in navigable water to an underwater structure," the Court held the disruptive-impact component was met, as "damaging a structure beneath the riverbed could lead to a disruption in the water course itself" and "could lead to restrictions on the navigational use of the waterway during required repairs." *Id*. at 539. The Court's focus in *Sisson* and *Jerome B. Grubart* on *possible* rather than *actual* consequences echoed *Foremost Insurance Co. v. Richardson*, 457 U.S. 668 (1982), which involved a collision of two pleasure boats on the Amite River in Louisiana, and where the Court held that the "potential disruptive impact of a collision between boats on navigable waters" was present regardless of whether the boats themselves were engaged in commerce or used for leisure. *Id*. at 669, 675.

In light of these precedents, the alleged tort in this case satisfies the disruptive-impact component of the connection requirement. Described at an intermediate level of generality, the incident involved the negligent operation of a vessel on navigable waters. Porter's alleged behavior could have adversely impacted maritime commerce in any number of ways: his boat

4

could have crashed into another boat or a pier; other vessels may have altered their course or ceased moving entirely to avoid a potential collision; or a passenger could have been flung overboard, requiring rescue teams to close off a portion of the lake. Brown correctly observes that none of these things actually happened. Doc. 18 at 4 (noting that this case "does not involve a collision between multiple boats" and "at no point did the boat crash into any sea wall"). That is irrelevant—as noted, all that matters is that the conduct had the *potential* to disrupt maritime commerce, and the negligent operation of a boat on open water clearly has that potential.

It is true that *Foremost Insurance*, the case involving a collision of two pleasure boats, cautioned that "[n]ot every accident in navigable waters that might disrupt maritime commerce will support federal admiralty jurisdiction," but it did so to underscore the necessity of the accident arising out of traditional maritime activity. 457 U.S. at 675 n.5 (distinguishing its facts from those in *Executive Jet*, where "the sinking of the plane in navigable waters did not give rise to a claim in admiralty even though an aircraft sinking in the water could create a hazard for the navigation of commercial vessels in the vicinity"). Here, the operation and navigation of a boat on Lake Michigan bears a substantial relationship to traditional maritime activity. Accordingly, because the alleged tort (1) occurred on a navigable waterway, (2) had the potential to disrupt maritime commerce, and (3) arose from an activity bearing a substantial relationship to traditional maritime activity, the case falls within the § 1333 admiralty jurisdiction.

## II.   Brown May Invoke the Saving-To-Suitors Clause To Bar Removal

That is not the end of the matter, however, for Brown argues that a plaintiff who brings suit in state court can invoke the saving-to-suitors clause to preclude removal where, as here, the suit arises under the § 1333 admiralty jurisdiction but presents no alternative basis for federal jurisdiction. Section 1333 provides in relevant part: "The district courts shall have original

5

jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, *saving to suitors in all cases all other remedies to which they are otherwise entitled*." 28 U.S.C. § 1333 (emphasis added). The question here is whether the "remedies" preserved by the saving-to-suitors clause include an admiralty plaintiff's right to initially select and then retain a state forum where there is no alternative, non-admiralty ground for federal jurisdiction.

"What the drafters of the Judiciary Act intended in creating the saving to suitors clause is not entirely clear and has been the subject of some debate." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 444 (2001). Despite these interpretive difficulties, the Supreme Court has

> theorized that the saving to suitors clause was inserted, probably, from abundant caution, lest the exclusive terms in which the power is conferred on the District Courts might be deemed to have taken away the concurrent remedy which had before existed. This leaves the concurrent power where it stood at common law.

*Ibid*. (internal quotation marks omitted). More specifically, the Court explained that the clause operates "as a grant to state courts of *in personam* jurisdiction, concurrent with admiralty courts." *Id*. at 445. The Court added that it had "previously refused to hold that admiralty claims … fall within the scope of [28 U.S.C. § 1331] federal question jurisdiction out of concern that saving to suitors actions in state court would be removed to federal court and undermine the claimant's choice of forum." *Id*. at 455. Put another way:

> Admiralty's jurisdiction is exclusive only as to those maritime causes of action begun and carried on as proceedings in rem, that is, where a vessel or thing is itself treated as the offender and made the defendant by name or description in order to enforce a lien. It is this kind of in rem proceeding which state courts cannot entertain. But the jurisdictional act does leave state courts competent to adjudicate maritime causes of action in proceedings in personam, that is, where the defendant is a person, not a ship or some other instrument of navigation.

*Madruga v. Superior Court*, 346 U.S. 556, 560-61 (1954) (internal citations and quotation marks omitted); *see also Reedsburg Bank v. Apollo*, 508 F.2d 995, 999 (7th Cir. 1975) (noting that state courts retain concurrent jurisdiction over *in personam* actions in admiralty); 14A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3672 (4th ed. 2013) ("Th[e] so-called saving-to-suitors clause effectively provides a plaintiff who has an in personam claim the choice of proceeding … in a state or federal court ….").

Accordingly, because Brown brought this suit *in personam* against a person (Porter), the state court has concurrent jurisdiction. The question remains, however, whether the saving-to-suitors clause's preservation of "all other remedies to which [suitors] are otherwise entitled" allows plaintiffs in cases like this one to prevent removal. In *In re Chimenti*, 79 F.3d 534 (6th Cir. 1996), the Sixth Circuit persuasively answered this question in the affirmative. After his jet skis malfunctioned in the Gulf of Mexico, leaving him to drift aimlessly for 51 hours, the plaintiff brought suit against his travel agents. *Id*. at 536. The defendants removed the suit, and the district court denied the plaintiff's motion to remand. *Ibid*. The Sixth Circuit reversed, holding that "actions brought in state court under the 'saving to suitors' clause are not generally removable … since the entire purpose of the saving clause was to give claimants pursuing a common-law remedy the ability to choose their forum." In reaching that conclusion, the court relied on *Romero v. International Terminal Operating Co.*, 358 U.S. 354 (1959), where the Supreme Court explained that:

> the historic option of a maritime suitor pursuing a common-law remedy to select his forum, state or federal, would be taken away by an expanded view of § 1331, since saving-clause actions would then be freely removable under [28 U.S.C.] § 1441. … By making maritime cases removable to the federal courts it would make considerable inroads into the traditionally exercised concurrent jurisdiction of the state courts in admiralty matters—a jurisdiction which it was the unquestioned aim of the saving clause of 1789 to preserve.

7

*Id*. at 371-72 (citation omitted).  Based on the Supreme Court's reasoning that the saving-to-suitors clause protects a plaintiff's ability to select his forum, the Sixth Circuit ruled that § 1333 "provides a basis for federal jurisdiction in *in personam* actions if the claimant so chooses, [but] provides no basis for removal if the claimant does *not* so choose." *In re Chimenti*, 79 F.3d at 537-38.  An exception to this rule provides that a defendant may remove an admiralty case if there is an independent basis for federal subject matter jurisdiction—*i.e.*, a basis other than admiralty, such as complete diversity of citizenship with the requisite amount in controversy under 28 U.S.C. § 1332(a).  *Id*. at 538.

Other courts of appeals to have confronted this issue have reached the same conclusion. *See Morris v. TE Marine Corp.*, 344 F.3d 439, 444 (5th Cir. 2003) ("General maritime claims saved to suitors are, of themselves, not removable … [but] removal is appropriate if federal jurisdiction exists under a separate statute."); *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 390 (3d Cir. 2002) ("[A]n admiralty case filed in state court may only be removed if there exists some independent basis for federal jurisdiction, such as diversity of citizenship."); *Servis v. Hiller Sys. Inc.*, 54 F.3d 203, 207 (4th Cir. 1995) ("Admiralty and maritime cases may … be removable to federal court when there exists some independent basis for federal jurisdiction, such as diversity of citizenship or when federal jurisdiction is independently established by a federal maritime statute.") (citation omitted); *see also* Wright, Miller & Cooper, *supra*, § 3674 ("[S]aving clause cases theoretically are removable, and a number of cases so hold, only if all of the elements of diversity jurisdiction—complete diversity of citizenship among these contesting parties and the requisite amount in controversy—or some other federal subject-matter jurisdiction basis is present in the action.") (footnotes omitted).  Still other circuits, including the Seventh, have expressed agreement in dicta.  *See In the Matter of Ill. Marine Towing, Inc.*, 498

F.3d 645, 650 (7th Cir. 2007) ("[T]he saving to suitors clause evinces a preference for common law remedies in the forum of the claimant's choice, and trial by jury is an example of a remedy available to suitors.") (internal citation and quotation marks omitted); *Oklahoma ex rel. Edmondson v. Magnolia Marine Transp. Co.*, 359 F.3d 1237, 1240-41 (10th Cir. 2004) (discussing the "persuasive[]" argument that the saving-to-suitors clause precludes removal without an independent basis for jurisdiction); *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1069 (9th Cir. 2001) (recognizing that other courts "have held that saving clause claims brought in state court are not removable under 28 U.S.C. § 1441 absent some other jurisdictional basis," but ultimately finding that the plaintiff had forfeited the argument).

Porter does not dispute the holdings of the above-cited cases, but instead argues that they have been rendered obsolete by the 2011 amendment to 28 U.S.C. § 1441(b), a sub-section of the general removal statute. Doc. 20 at 8-11. This issue has deeply divided district court judges; the various decisions are catalogued in *Langlois v. Kirby Inland Marine, LP*, __ F. Supp. 3d __, 2015 WL 5999831, at *4-5 (M.D. La. Oct. 15, 2015). To the undersigned's knowledge, no court of appeals has resolved the issue, though the Seventh Circuit flagged it before concluding that the plaintiffs had forfeited any contention that the amendment to § 1441(b) left intact the interpretation of the § 1331(1) saving-to-suitors clause in cases like *Romero* and *Chimenti* by failing to argue the point. *See Lu Junhong v. Boeing Co.*, 792 F.3d 805, 817-18 (7th Cir. 2015).

Having carefully reviewed the arguments both pro and con, this court agrees with the decisions holding that the amendment to § 1441(b) did not disturb the settled principle that § 1331(1)'s saving-to-suitors clause allows a plaintiff to forestall removal where the only basis for federal jurisdiction is the admiralty jurisdiction. In particular, the court finds persuasive the analysis set forth in *Gregoire v. Enterprise Marine Services, LLC*, 38 F. Supp. 3d 749, 754-65

(E.D. La. 2014). It bears mention that the district judge who authored *Ryan v. Hercules Offshore, Inc.*, 945 F. Supp. 2d 772 (S.D. Tex. 2013), the seminal decision holding that the amendment to § 1441(b) rendered obsolete cases like *Romero* and *Chimenti*, later changed his mind in light of *Gregoire*. *See Sanders v. Cambrian Consultants (CC) Am., Inc.*, __ F. Supp. 3d __, 2015 WL 5554639, at *4-5 (S.D. Tex. Sept. 21, 2015). Because the various arguments in support of both sides of the issue have been thoroughly ventilated elsewhere, there is no need to spill much additional ink, so the court will limit itself to the following observations.

The plaintiff in *Romero* brought suit on the "law side" of the federal district court after being "seriously injured when struck by a cable on the deck of the [S.S.] Guadalupe." 358 U.S. at 356. There was no doubt that "[j]urisdiction of [Romero's] claims could have been established on the admiralty side of the District Court since 28 U.S.C. § 1333 … specifically grants jurisdiction in the District Courts in 'case(s) of admiralty or maritime jurisdiction.'" *Id*. at 390-91 (Brennan, J., concurring in part). The dispute concerned whether Romero could also bring "maritime claims rooted in federal law … on the law side of the lower federal courts." *Id*. at 359-60. At the time, the distinction mattered because federal courts sitting in admiralty were governed by different procedures and provided different remedies than federal courts sitting in law; for instance, jury trials generally were not permitted in admiralty court. *Id*. at 363. Because the parties were not completely diverse, Romero could maintain his claims on the law side of the district court only under § 1331, which then (as now) conferred jurisdiction in civil actions arising "under the Constitution, laws, or treaties of the United States." *Id*. at 357-60 & n.2. The Court held that admiralty claims did not fall under the § 1331 federal question jurisdiction and therefore that a federal court sitting in law had no jurisdiction over the case. *Id*. at 378-79.

This holding rested on several historical and practical grounds. For one, the Court had previously explained in *American Insurance Co. v. Canter*, 26 U.S. (1 Pet.) 511 (1828), that the Constitution extends the judicial power to three discrete classes of federal cases: "to all cases in law and equity, arising under this Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority; to all cases affecting ambassadors, or other public ministers, and consuls; [and] to all cases of admiralty and maritime jurisdiction." *Id*. at 545. Because "the language of [§ 1331] was taken straight from Art. III, s 2, cl. 1," and because the drafters of the statute in 1875 would have been familiar with *Canter*, the Court reasoned that the jurisdiction created by § 1331 was intended to be distinct and separate from the admiralty jurisdiction. *Romero*, 358 U.S. at 363-68. What is more, the Court explained, if plaintiffs could always bring admiralty cases in district courts sitting in law, the unique procedures and remedies specifically designed for admiralty actions effectively would be abolished:

> We have uncovered no basis for finding the additional design of changing the method by which federal courts had administered admiralty law from the beginning. The federal admiralty courts had been completely adequate to the task of protecting maritime rights rooted in federal law. There is not the slightest indication of any intention, or of any professional or lay demands for a change in the time-sanctioned mode of trying suits in admiralty without a jury, from which it can be inferred that by the new grant of jurisdiction of cases 'arising under the Constitution or laws' a drastic innovation was impliedly introduced in admiralty procedure, whereby Congress changed the method by which federal courts had administered admiralty law for almost a century. To draw such an inference is to find that a revolutionary procedural change had undesignedly come to pass.

*Id*. at 368-69. Most significantly, and as noted above, the Court explained that deeming admiralty cases to fall within the § 1331 federal question jurisdiction would destroy the purpose of § 1333's saving-to-suitors clause by allowing the removal of admiralty cases to federal court under § 1441:

> [T]he historic option of a maritime suitor pursuing a common-law remedy to select his forum, state or federal, would be taken away by an expanded view

> of § 1331 since saving-clause actions would then be freely removable under
> § 1441 …. The interpretation of [§ 1331] contended for would have
> consequences more deeply felt than the elimination of a suitor's traditional
> choice of forum. By making maritime cases removable to the federal courts it
> would make considerable inroads into the traditionally exercised concurrent
> jurisdiction of the state courts in admiralty matters—a jurisdiction which it
> was the unquestioned aim of the saving clause of 1789 to preserve.

*Id*. at 371-72. The Court added: "The removal provisions of the original Judiciary Act of 1789, 1 Stat. 79, conferred a limited removal jurisdiction, not including cases of admiralty and maritime jurisdiction. In none of the statutes enacted since that time have saving-clause cases been made removable"—though it recognized that "diversity cases," which have an independent, non-admiralty basis for federal jurisdiction, may be removed. *Id*. at 363 & n.16.

This brings us to the effect, if any, of the 2011 amendment to § 1441(b). When *Romero* was decided, § 1441(b) read:

> Any civil action of which the district courts have original jurisdiction founded
> on a claim or right arising under the Constitution, treaties or laws of the
> United States shall be removable without regard to the citizenship or residence
> of the parties. Any other such action shall be removable only if none of the
> parties in interest properly joined and served as defendants is a citizen of the
> State in which such action is brought.

28 U.S.C. § 1441(b) (1958). The Seventh Circuit recently stated that *Romero*, by holding that admiralty cases do not fall within the § 1331 federal question jurisdiction and thus (absent an independent basis for federal jurisdiction) cannot be removed under § 1441, necessarily concluded that admiralty cases were properly classified as "[a]ny other such action[s]" within the meaning of § 1441(b)'s second sentence and could not be classified as among the cases covered by the first sentence. *See Lu Junhong*, 792 F.3d at 817; *accord In re Dutile*, 935 F.2d 61, 63 (5th Cir. 1991) (holding that "admiralty and general maritime claims fall within the category of '[a]ny other [civil] action' governed by the second sentence of § 1441(b)") (alterations in original). That interpretation of *Romero* is open to question. Nowhere does *Romero* actually make the

point attributed to it by *Lu Junhong*; in fact, *Romero* expressly held, in the passage quoted at the end of the previous paragraph, that *all* admiralty cases (again, absent an independent jurisdictional basis like diversity) were non-removable, and not just those where a defendant is a citizen of the forum State.

Whether *Lu Junhong* correctly read *Romero* in this particular respect is immaterial because, either way, the 2011 amendment to § 1441(b) did not upend § 1331(1)'s saving-to-suitors clause and the precedents interpreting the clause. As amended, § 1441(b) reads:

> (b) Removal based on diversity of citizenship.—(1) In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.
>
> (2) A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

Section 1441(b) is now limited exclusively to cases under the § 1332(a) diversity jurisdiction; it cannot possibly be read to allow the removal of § 1333 admiralty cases. Thus, whether the pre-amendment § 1441(b) allowed the removal of § 1333 admiralty cases only where no defendant was a citizen of the forum State (as *Lu Junhong* says) or not at all (as *Romero*, 358 U.S. at 363 & n.16, says), the amendment did not allow or enhance the removability of admiralty cases. Rather, the amendment either (if *Lu Junhong* is right) extinguished the limited exception to the prohibition of removal or (if *Lu Junhong* is wrong) kept the categorical prohibition intact.

It would suffice to stop there, but one further point is in order. The amendment to § 1441(b) does not mention § 1333 or the admiralty jurisdiction; to the court's knowledge, neither does the amendment's legislative history. It follows that Porter's position that the amendment upended decisions like *Romero* and *Chimenti* rests on the premise that the amendment impliedly repealed § 1333(1)'s saving-to-suitors clause to the extent the clause

13

allowed an admiralty plaintiff in an *in personam* suit to forestall removal where there is no non-admiralty basis for federal jurisdiction. The implied repeal doctrine provides that if two statutes "are so inconsistent that the provisions of both cannot reasonably be construed to be in effect at the same time, the later repeals the earlier to the extent of such inconsistency, even in the absence of a repealing clause." *Campbell v. City of Chicago*, 119 F.2d 1014, 1017 (7th Cir. 1941); *see also Vision Processing, LLC v. Groves*, 705 F.3d 551, 559 (6th Cir. 2013) ("Where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one."); 1A Norman J. Singer & Shambie Singer, *Statutes and Statutory Construction* § 23:9 (7th ed. 2014) ("[W]hen two statutes are repugnant in any of their provisions, the later act, even without a specific repealing clause, operates to the extent of the repugnancy to repeal the first."). The doctrine is narrow: "[A]bsent a clearly expressed congressional intention, … [a]n implied repeal will only be found where provisions in two statutes are in irreconcilable conflict, or where the latter Act covers the whole subject of the earlier one and is clearly intended as a substitute." *Carcieri v. Salazar*, 555 U.S. 379, 395 (2009) (internal quotation marks omitted). "[I]n the face of silence by Congress," there is no implied repeal if the "two statutory provisions … are capable of coexistence." *L.D.G. v. Holder*, 744 F.3d 1022, 1031 (7th Cir. 2014). "[R]epeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest." *Hui v. Castaneda*, 559 U.S. 799, 810 (2010).

There was no implied repeal here. The amendment to § 1441(b) does not mention admiralty, and thus cannot be understood to cover "the whole subject" of § 1333 or its saving-to-suitors clause. And the amended § 1441(b) is not irreconcilable with § 1331(1); the former governs the circumstances under which § 1332(a) diversity cases may be removed, while the

latter allows the plaintiff to forestall removal of an *in personam* admiralty case with no independent basis for federal jurisdiction. Because the provisions are eminently capable of coexistence, there was no implied repeal. *See Ill. Ass'n of Mortg. Brokers v. Office of Banks & Real Estate*, 308 F.3d 762, 764 (7th Cir. 2002) ("The 1994 Act does not repeal the 1982 Act in so many words, and implied repeal occurs only when the statutes are irreconcilable. All the district court concluded, however, is that the 1982 and 1994 Acts concern the same subject matter. That is not, and never has been, enough to show that the most recent statute repeals its predecessors.") (citation omitted).

Porter presents no other argument for holding that the 2011 amendment defeats a plaintiff's ability to invoke the saving-to-suitor clause to defeat removal. Accordingly, Porter may not remove this action unless there is an independent basis of subject matter jurisdiction. But he has not argued that this case gives rise to federal question jurisdiction under § 1331 or diversity jurisdiction under § 1332(a). And nor could he credibly do so, as the complaint pleads an ordinary negligence claim and both parties are Illinois citizens. Remand therefore is appropriate.

## Conclusion

This case falls within the § 1333 admiralty jurisdiction, which gave Brown the option to file suit in federal court. But given his election to proceed in state court and his invocation of § 1333(1)'s saving-to-suitors clause, and also given the lack of any alternative, non-admiralty ground for federal jurisdiction, Brown may forestall removal and insist upon a remand. This case therefore is remanded to the Circuit Court of Cook County, Illinois.

_____
United States District Judge

February 12, 2016